# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL LAMONT PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-CV-480-TCK-TLW |
| | ) | |
| STANLEY GLANZ, | ) | |
| JACK REUSSER, | ) | |
| MICHELLE ROBINETTE, | ) | |
| DAVID L. MOSS | ) | |
| CRIMINAL JUSTICE CENTER, | ) | |
| and | ) | |
| TULSA COUNTY BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| Defendants. | ) | |

## **OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 13) and Plaintiff's response (Doc. 16). No reply was filed, and the motion is ripe for review.

**I.     Factual Allegations**

While a federal prisoner in Forrest City, Arkansas, Plaintiff filed a pro se Petition in Tulsa County, Oklahoma, asserting claims against the following Defendants: Tulsa County Sheriff Stanley Glanz ("Glanz"); Deputy Sheriffs Michelle Robinette ("Robinette") and Jack Reusser ("Reusser"); David L. Moss Criminal Justice Center ("Center"); and the Tulsa County Board of Commissioners ("Board"). Glanz, Robinette, and Reusser ("Defendants") removed the action to this Court on August 14, 2014 and filed the pending motion to dismiss.[1]

---

[1] Defendants Center and Board have not entered an appearance, and there is no evidence in the record showing that such Defendants have been served. Further, according to Defendants, Center is not a suable entity.

Plaintiff's claims arise from events that occurred while he was incarcerated at the Center, a detention facility located in Tulsa, Oklahoma. Plaintiff alleges that his relatives deposited $20,000.00 in his commissary account for his use. On or around September 27, 2012, when the account had a remaining balance of $19,100.00, Plaintiff discovered that his account had been "frozen" and that he could not access the funds. On October 25 and November 2, 2012, Plaintiff submitted a "Request to Staff" to gain access to the account, each of which was denied by Reusser. On or around February 24, 2013, Plaintiff filed a written grievance with Robinette requesting that she permit him access to his account. In a response dated March 5, 2013, Robinette informed Plaintiff that his account would remain frozen pending the outcome of an investigation by the United States Secret Service. Plaintiff contends that he lacked access to the account for a period of twenty-one months, resulting in his inability to purchase toiletries and other items. Plaintiff further contends that he was deprived of visitation and phone privileges during this period.[2]

The Court construes Plaintiff's Petition as asserting two claims: (1) violation of his constitutional rights by state actors, in violation of 42 U.S.C. § 1983; and (2) negligent infliction of emotional distress. With respect to his § 1983 claim, Plaintiff contends: (1) Defendants violated his Eighth Amendment right to be free of cruel and unusual punishment by depriving him of access to funds, thereby depriving him of toiletries and other privileges during this time; (2) Defendants violated his Fourth Amendment rights by unreasonably "seizing" the funds; (3) Defendants violated his Fourteenth Amendment right to equal protection because, to his knowledge, he was the only prisoner subjected to the alleged treatment; and (4) Defendants violated his Fourteenth Amendment

---

[2] It is unclear whether Plaintiff alleges that he was deprived of these privileges due to the investigation or lack of access to funds.

right to due process by failing to provide him with notice and a hearing prior to restricting his access to the funds.

Defendants argue that Plaintiff's § 1983 claim must be dismissed because (1) Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"); and (2) Plaintiff failed to state a claim for any constitutional violation by Defendants, either in their individual or official capacities. Defendants argue that Plaintiff's negligent infliction of emotional distress claim must be dismissed because (1) Defendants are exempt from tort liability under the Oklahoma Governmental Tort Claims Act ("OGTCA"); and (2) Plaintiff failed to exhaust administrative remedies under the OGTCA.

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

## III. 42 U.S.C. § 1983 - Exhaustion

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences," including single incidents of alleged misconduct by prison officials. *Porter v. Nussle*, 534 U.S. 516, 520 (2002) (rejecting argument that § 1997e(a) governs only conditions affecting prisoners generally and not excessive force or other conduct affecting only particular prisoners). The type of exhaustion required by § 1997e(a) has been termed by the Supreme Court as "proper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Defendants argue that Plaintiff "failed to exhaust administrative remedies provided by the Tulsa County Jail, or even allege that he has done so." (Mot. to Dismiss 6.) However, Defendants ignore the section of the Petition entitled "Statement of Administrative Remedy," which alleges that Plaintiff made two written requests that were denied by Reusser and submitted one written grievance

4

that was denied by Robinette. Defendants do not explain their "proper" grievance procedure or contend that Plaintiff's alleged attempts at exhaustion failed to technically comply with such procedures. Plaintiff's allegations are therefore sufficient to allege exhaustion. The Court is not making a determination that Plaintiff "properly" exhausted, as that term is used in *Wood*, because Defendants have not explained or provided evidence of what that procedure might be. Instead, the Court is simply holding that, contrary to Defendants' argument, Plaintiff has alleged certain and specific attempts at exhaustion that render it plausible that exhaustion occurred.

**IV.     42 U.S.C. § 1983 - Individual Capacity Claims**

Defendants argue that Plaintiffs' allegations fail to allege any possible violation of Plaintiff's constitutional rights.[3] Their brief focuses almost exclusively on the lack of any Eighth Amendment violation. Because the Petition clearly asserts other types of violations, the Court will address each. *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (noting that the "first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged'").

    **A.     Eighth Amendment Violation**

Being deprived of commissary funds, the ability to purchase toiletries, and/or phone and visitation privileges, as alleged in Plaintiff's Petition, cannot plausibly be deemed a "cruel and unusual" punishment under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that certain prison conditions may violate Eighth Amendment but that such conditions must be deemed "inhumane," such as failing to provide adequate food, clothing, shelter,

---

[3] Defendants did not invoke the doctrine of qualified immunity or address whether any possible constitutional violations were clearly established. Thus, the brief is limited to whether the Petition states any plausible constitutional violation, without regard to the second prong of a qualified immunity analysis.

5

medical care, or reasonable protection from violence). All Defendants are entitled to dismissal of this claim based on the absence of any plausible Eighth Amendment violation.

### B. Fourth Amendment Violation

"[P]ersons subject to criminal sanctions, such as incarcerated prisoners and parolees, have more limited Fourth Amendment rights," and prisoners' Fourth Amendment rights are not "coextensive with those of ordinary citizens." *Jenkins v. Currier*, 514 F.3d 1030, 1033 (10th Cir. 2008). Plaintiff admits that Reusser and Robinette communicated to Plaintiff that they restricted access to his account due to a criminal investigation. In light of the reduced Fourth Amendment protections in the prison setting, and Plaintiff's admission that an investigation was taking place, the Court finds that the allegations do not state any plausible Fourth Amendment violation for an unreasonable "seizure" of funds in the commissary account. As explained below, the allegations are a better fit under the Fourteenth Amendment's procedural due process protections.

### C. Equal Protection Violation

"Equal protection is essentially a direction that all persons similarly situated should be treated alike." *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006). Where an inmate does not claim different treatment because of any suspect classification such as race or religion, the inmate faces the "heavy burden" of proving that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Id.* Plaintiff alleges that prison officials treated him differently from other inmates, but he admits that officials informed him that this different treatment stemmed from an investigation by the United States Secret Service. Plaintiff's allegations fail to state an equal protection claim because an investigation into other or ongoing criminal activity cannot be viewed as an illegitimate penological purpose.

6

### D. Due Process Violation

"Prisoners['] claims alleging deprivations of property interest without due process of law are plainly cognizable under § 1983." *Birl v. Thaler*, 470 Fed. App'x 362, 363 (5th Cir. 2012); *Augustine v. Doe*, 740 F.2d 322, 328 & n.10 (5th Cir. 1984) (explaining that where prisoners are permitted to possess property, they have a protected interest in their property and that § 1983 provides a remedy if prison officials deprive prisoners of this interest without due process). Prisoners have generally been found to have a "property interest in the funds on deposit" in prison commissary accounts. *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986). In order to establish a claim for deprivation of this property interest, a prisoner must show that due process protections apply to the type of deprivation suffered and that he did not receive adequate process. *Id.* (assuming without deciding that inmate's restricted use of his account was a deprivation entitling him to due process but concluding that inmate's disciplinary hearing afforded him adequate process prior to the deprivation).

Here, Plaintiff alleges that he possessed over $19,000 in his commissary account, which is a property interest. Plaintiff has also alleged that his account was frozen for an extended period of time, which states a plausible claim for deprivation of that property interest. Further, Plaintiff's allegations indicate that he received no notice or process prior to the restriction, that he complained about the restriction, and that he was merely informed of the reason for the restriction rather than provided any type of notice or hearing at that time. Defendants have not cited law indicating that a pending investigation (or simply based upon the existence of a large deposit in a commissary account) excuses due process requirements. Therefore, Defendants are not entitled to dismissal of Plaintiff's alleged deprivation of his right to procedural due process.

### E. Personal Participation

Defendants also argue that they lacked any personal participation in the alleged violations because of the involvement of an outside law enforcement agency. However, Plaintiff's Petition indicates that his denial letters were from Reusser and Robinette, not with individuals from outside agencies. If they seek to avoid liability because they were directed by others to freeze the account, this requires proof and does not provide a basis for Rule 12(b)(6) dismissal. Further, with respect to Glanz, Plaintiff alleged that Glanz was carbon-copied on his grievance submitted to Robinette, indicating that Glanz may have also had personal involvement in the decision to restrict access to the funds.[4] The Court is without a factual record and without information regarding who instigated the investigation, the nature of the investigation, the involvement of local officials, or who made and/or participated in the decision to freeze the account pending the investigation. Plaintiff has sufficiently alleged personal participation by Defendants.

---

[4] Plaintiff may not succeed on a claim against Glanz based purely on his role as supervisor of Reusser or Robinette or simply because he was copied on the grievance. *See Porro*, 624 F.3d at 1337 (explaining that there is no concept of strict "supervisory liability" in § 1983 claims and that the supervisor must play a direct role in the constitutional violation in order to be individually liable). But Plaintiff's allegations are sufficient to allege some involvement by Glanz, and a factual record is necessary to flesh out the role of each individual in the decision-making process.

## V. 42 U.S.C. § 1983 - Official Capacity Claims (Municipal Liability)

"Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent." *Id.* at 1328. Therefore, the Court applies "the standard of liability to municipalities and counties" in adjudicating official capacity claims against these local officials. In order for municipal liability to attach, a plaintiff must demonstrate (1) the existence of an official policy or custom; (2) the challenged policy was closely related to the constitutional violation; and (3) the municipality had actual or constructive notice that its action was substantially certain to result in a constitutional violation, and it consciously or deliberately chose to disregard the risk of harm. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770-71 (10th Cir. 2013).

For the reasons explained above, the only remaining constitutional claim to which municipal liability may possibly attach is violation of Plaintiff's right to procedural due process prior to restricting access to his commissary account. Plaintiff's allegations invoke three potential policies or customs leading to this violation: (1) to restrict access to commissary accounts when the amount deposited exceeds a certain amount, or (2) to restrict access to commissary accounts when the inmate is being investigated by an outside agency such as the United States Secret Service, and/or (3) to follow the instructions of an outside agency conducting an investigation related to an inmate, including an instruction to restrict his access to a commissary account. These are sufficient at this early stage of the proceeding to state a plausible claim for relief for the first and second elements. The final element – deliberate indifference to a constitutional violation – seems to present a difficult hurdle. However, Defendants have not cited any substantive law regarding a prison official's routine or standard ability to restrict access to commissary accounts, and the law located by the

9

Court indicates that some process may indeed be due under certain circumstances. Therefore, Defendants are not entitled to dismissal of any municipal liability claims, and the Court will permit the case to proceed against Glanz in his official capacity.

## VI. Tort Claim

Any tort claims asserted against Defendants in their "official" capacities, *i.e.*, against the political subdivision, are barred by the OGTCA. Okla. Stat. tit. 51, § 155(25) (state or political subdivision shall not be liable if a loss or claim results from operation of any prison, jail or correctional facility). Defendants failed to address the tort claim asserted against them individually.[5] The tort claim shall be dismissed against all Defendants in their official capacities and shall proceed against all Defendants in their individual capacities only.

## VII. Conclusion

Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 13) is GRANTED in part and DENIED in part as follows.

<u>42 U.S.C. § 1983</u> (Individual Capacity)

Eighth Amendment - Granted
Fourth Amendment - Granted
Fourteenth Amendment (Equal Protection) - Granted
Fourteenth Amendment (Procedural Due Process) - Denied

<u>42 U.S.C. § 1983</u> (Official Capacity/Municipal Liability) - Denied

---

[5] Thus, they have not argued that this claim must be dismissed because they were acting within the scope of their county employment, *see generally* Okla. Stat. tit. 51, § 163(C); *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 n.17 (Okla. 2001); or that the allegations fail to satisfy the necessary elements for a negligent infliction of emotional distress claim, *see generally Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 173 (Okla. 2008) ("[I]n Oklahoma the negligent causing of emotional distress is not an independent tort, but is in effect the tort of negligence.").

<u>Negligent Infliction of Emotional Distress</u> (Official Capacity/Municipal Liability) - Granted

<u>Negligent Infliction of Emotional Distress</u> (Individual Capacity) - Denied

The parties shall confer and file a Joint Status Report no later than four weeks from the date of this Order. The parties shall endeavor to present a reasonable discovery plan and deadlines in light of Plaintiff's pro se status. On December 5, 2014, Defendant provided notice to the Court of a new address at a halfway house in Oklahoma City. Prior to sending this Order to such address, the Clerk of Court is directed to call and verify that Plaintiff is still residing there and, if not, endeavor to find a proper mailing address for Plaintiff.

**SO ORDERED** this 19th day of February, 2015.

_____
TERENCE C. KERN
United States District Judge